

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

1000 LOUISIANA, SUITE 2000
HOUSTON, TX 77002
713.276.5500 TEL
WWW.FOLEY.COM

713.276.5615
sellis@foley.com

February 14, 2024

> Plaintiff's request for a conference is GRANTED. The parties shall meet before the Court on **February 22, 2024, at 10:30 a.m. (E.T.)**. The parties are directed to dial 646-453-4442, enter the meeting code 730 929 302, and press pound (#). Defendants have until **February 20, 2024**, to file a response to this letter, pursuant to this Court's Rule 4(k)(iv).
>
> SO ORDERED.
>
> Dale E. Ho
> United States District Judge
> New York, New York
> Dated: February 15, 2024

<u>*Via E-Filing*</u>
Honorable Dale E. Ho
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Federal Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   Case No. 20-CV-8448; *Constellation NewEnergy, Inc. v. West Side Manhattan Real Estate LLC*

Dear Honorable Judge Ho,

We represent Plaintiff, Constellation NewEnergy, Inc. ("Constellation"), in the above-styled case. Pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices in Civil Cases, Constellation submits this letter motion to schedule a conference on Constellation's request to compel discovery from Defendant West Side Manhattan Real Estate LLC ("West Side"), and to request an extension of the discovery deadline solely for the purpose of allowing West Side to make productions to rectify the aforementioned deficiencies and allowing West Side to present a 30(b)(6) corporate representative for deposition upon completion of the discovery.

Constellation's claims arise out of West Side's failure to pay amounts owed pursuant to an Electricity Supply Agreement ("ESA") that the parties executed on June 29, 2017. Pursuant to the ESA, West Side agreed to purchase and receive, and Constellation agreed to sell and supply, all of West Side's electricity requirements for its medical office building. West Side also agreed to purchase and have installed energy efficiency equipment in its building. West Side signed a Material Acceptance Form acknowledging its acceptance of the energy efficiency equipment at the building. In accordance with the ESA, Constellation paid $964,062.72 to a contractor to install the energy efficiency equipment in West Side's building, which triggered West Side's obligation to begin making monthly payments to Constellation under the ESA. Pursuant to the ESA, West Side agreed to pay a total of $1,328,968.72 for the energy efficiency equipment, and ultimately paid $102,381.11 of this amount. Despite Constellation funding the installation of the energy efficiency equipment and West Side signing the Material Acceptance Form, West Side failed to pay the total amount owed for the energy efficiency equipment. West Side owes Constellation a total of $1,244,364.53, and continues to use the equipment for which it has not paid.

West Side's main defense to Constellation's claims is that the signatory to the ESA lacked authority to sign the ESA, and that West Side's current management "had zero knowledge" of the ESA. West Side also contends that John Hajjar, the Manager of West Side when the ESA was signed,



February 14, 2024
Page 2

did not have the authority to bind West Side to the ESA. As a result, West Side claims that the ESA is an ultra vires contract, and is thus, null and void.

On January 1, 2021, Constellation sent its first set of requests for production and interrogatories to West Side, and its second set of requests for production and interrogatories on August 7, 2023. True and correct copies of West Side's responses to the requests for production are attached hereto as Exhibit 1. Many of Constellation's requests relate to West Side's defense that Dr. Hajjar lacked authority to bind West Side to the ESA, and that the current management did not have knowledge of the ESA. *See id*.

On October 9, 2023, Constellation sent a discovery deficiency letter to West Side to address numerous deficiencies with its document production, and its responses to Constellation's requests for production. A true and correct copy of this letter is attached hereto as Exhibit 2. In the letter, Constellation advised that West Side's document was substantially incomplete because West Side had only produced twelve emails, and of those twelve emails, only three were sent to or from West Side's current members. *Id*. West Side's document production made clear that West Side had not made a diligent effort to search for responsive documents and communications from any of their members. Constellation also pointed out other issues with West Side's responses and document production, including that West Side waived its objections by failing to timely respond to Constellation's requests, and that West Side failed to produce documents in a format that complied with Rule 34(a)(1) or the instructions in Constellation's requests. *Id*. On November 1, 2023, counsel for Constellation and West Side attended a call to confer regarding the issues set forth in the letter. During this call, West Side's counsel represented that he "would produce everything."

On November 15, 2023, Constellation's counsel asked West Side's counsel for a status update regarding the document production. A true and correct copy of this email is attached hereto as Exhibit 3. On November 16, West Side's counsel responded that he was "working with our e-discovery team to gather electronic documents, **first from Dr. Shahim and Dr. Hosny (who have the largest number of documents) and also from WSMRE's physician owners** (whom we expect will have very few documents)." *Id*. (emphasis added). Constellation continued following up about the status of the production and on December 21, West Side's counsel advised that he would produce Dr. Shahim's emails within a few days, and Dr. Hosny's emails by the end of the year. On December 27, West Side produced a limited amount of emails from Dr. Shahim.

On January 2, 2024, West Side's counsel advised, for the first time and contrary to its previous representations, that West Side would not be producing emails from Dr. Hosny, or any of West Side's other twelve members. A true and correct copy of this letter is attached hereto as Exhibit 4. West Side claimed that they "had little to no involvement with issues having to do with Constellation" because they were "passive investors in WSMRE." *Id*. As a result, West Side claimed, for the first time, that producing their emails would be unduly burdensome.



February 14, 2024
Page 3

On January 19, 2024, Constellation took the deposition of Dr. Shahim, West Side's current Manager. Dr. Shahim testified that when Dr. Hajjar began requesting that the West Side members pay money related to the equipment installed under the ESA, Dr. Hajjar "started just bombarding us with emails" and that "[i]t was just flooding our mailboxes and a lot of it I just deleted." Shahim Depo. Transcript at 117:1-3, 9-8. Excerpts of Dr. Shahim's deposition transcript are attached hereto as Exhibit 5. Despite Dr. Shahim's testimony, West Side has produced only two emails between Dr. Hajjar and the current West Side members. And West Side's counsel has confirmed they did not make any effort to collect relevant emails from members other than Dr. Shahim even though he testified that he deleted many of these emails.

On February 9, 2024, Constellation emailed West Side to advise that it would be filing a motion with respect to this discovery dispute. A true and correct copy of this email is attached hereto as Exhibit 6. On February 12, 2024, counsel for Constellation and West Side attended a call to discuss the discovery dispute which made clear that the parties were at an impasse.

Emails exchanged amongst the West Side members, and between the West Side members and Dr. Hajjar, are highly relevant to this dispute because West Side claims that its members did not have any knowledge of the ESA, and because West Side claims that Dr. Hajjar did not have authority to bind West Side to the ESA. As a result, Constellation needs to discover these emails because they are critical to being able to refute West Side's affirmative defenses. Furthermore, if West Side's counsel is correct that any relevant emails from the West Side members would be limited, then it should not be unduly burdensome to collect these emails from them.

Accordingly, for the above stated reasons, Constellation respectfully requests a conference on this letter motion to compel relevant documents from West Side and an extension of the discovery deadline solely for the purpose of allowing West Side to produce responsive documents and communications to Constellation's discovery requests from each of its members, and allowing West Side to present a 30(b)(6) corporate representative for deposition upon completion of the discovery.

Respectfully submitted,

*/s/ Scott D. Ellis*
Scott D. Ellis, Esq.

cc: Counsel of Record via ECF