UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSTELLATION NEWENERGY, INC.,

Plaintiff,

v.

WEST SIDE MANHATTAN REAL ESTATE LLC,

Defendant.

20 Civ. 8448 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Before the Court are competing Motions for Summary Judgment regarding an alleged breach of an Electricity Supply Agreement ("Agreement"). *See* ECF Nos. 117 (Pl.'s Motion), 122 (Def.'s Motion).[1] The parties raise various issues under agency law, but one thing is indisputable: Defendant West Side Manhattan Real Estate LLC ("West Side") ratified the Agreement, binding itself by making payments on and affirming its obligations under the Agreement. Accordingly, the Court **GRANTS** summary judgment to Plaintiff Constellation NewEnergy, Inc. ("Constellation") and **DENIES** West Side's cross-motion.

**BACKGROUND**

The following facts are undisputed by the parties unless stated otherwise. Constellation is an energy company providing power, natural gas, renewable energy, and energy management products and services for homes and businesses across the continental United States. Constellation's LR 56.1 Statement ¶ 1 ("Const. Stmnt."), ECF 119. Defendant West Side is a New

---

[1] Defendant West Side Manhattan Real Estate LLC also filed as "motions" various documents in support of its summary judgment motion at ECF Nos. 123 (Memorandum of Law in Support), 124 (exhibits), and 125 (Rule 56.1 Statement).

York limited liability company. *Id.* ¶ 2. West Side owns a medical office building located at 438 W. 51st Street, New York, New York 10019 (the "West Side Office Building"). *Id.* ¶ 3.

This dispute stems from an alleged Electricity Supply Agreement (the "Agreement") entered for the purposes of supplying power to this building from September 20, 2017 through March 23, 2022. *Id.* ¶ 4. Per the text of the agreement, "West Side agreed to pay Constellation a total of $1,638,073.80 in fifty-four (54) monthly installments of $30,334.70 per month." *Id.* ¶ 5. As part of Constellation's provision of services under the contract, Constellation hired a subcontractor known as Energy Conservation and Supply Global ("ECS"). *Id.* Once West Side agreed to the contract, Constellation paid ECS $964,062.72.11 for their services on the project. *Id.* Constellation also delivered materials to West Side's facility, as demonstrated by the July 18, 2017, material acceptance form signed by Schack. Exh. 2 to Vogelei Declaration in Support of Motion (Material Acceptance Form), ECF No 121-2.

Constellation began invoicing West Side for the electricity and related services, but West Side failed to make payments. *Id.* ¶ 6. On April 30, 2019, Constellation submitted a final invoice to West Side, which West Side failed to pay. *Id.* On May 23, 2019, Constellation sent a demand letter to West Side, demanding that West Side pay all past due amounts within five (5) days, and warning that if payment was not received, Constellation would terminate the Agreement. West Side failed to make any payment to Constellation after receiving the demand letter. *Id.* ¶ 7.

West Side argues that they were not bound to the Agreement because it was entered into by an agent without the authority to do so. West Side Memorandum of Law in Support of Summary Judgment, ECF No. 123. For background, West Side was founded and managed by John Hajjar, who was given complete control over West Side's operations relating to construction of facility. Exh. 1 to Ellis Declaration in Support of Opposition ("Shahim Depo.") at 88:11-21, ECF No. 130-1. As West Side admits, "[d]uring the time that Dr. Hajjar was [West Side's] manager, 'the only

2

person who had authority in the building was the manager, [and] that was John Hajjar.'" West Side SJ Mot. at 3-4 (citing Exh. A to Certification of Thomas A. Gentile ("Shahim Depo. Pt. II") at 31:15-17, ECF 124-1). West Side's members engaged in little to no oversight of Hajjar's actions, even in the case of multimillion dollar loans—something that West Side's current manager admitted, and which he described as "very stupid." Shahim Depo. at 88:11-21, 101:3-104:21, 105:10-106:15. Related to Hajjar's dealings with West Side, the United States intervened in this action to ensure this litigation would not interfere in their criminal investigation of Hajjar and his associates. *See* ECF No. 59.

Hajjar managed several entities as part of his business portfolio, including Regent Medical Properties, LLC ("Regent"), a company Hajjar used to manage his real estate holdings. Exh. 2 to Ellis Declaration in Support of Opposition (Hosny Depo.) at 59:4-24. The Chief Investment Officer of Regent was Barton Schack. Exh. 4 to Ellis Declaration in Support of Opposition (ECS Project Proposal – WSMRE-00000579 – 675) at WSMRE-00000581, ECF 130-4. As at least one West Side member admits, Schack was involved in the construction and worked with Hajjar in managing West Side's construction efforts. Exh. 2 to Ellis Declaration in Support of Opposition ("Hosny Depo.") at 61:15-64:5, ECF 130-2. Schack eventually plead guilty to a $91.5 million bank fraud conspiracy. West Side's LR 56.1 Statement ¶ 30 ("West Side Stmnt.").

In June 2017, Shack signed the disputed Agreement on West Side's behalf. West Side Stmnt. ¶ 25. The parties disagree as to whether he had the authority to do so, disputing facts surrounding his authority to act on behalf of Hajjar. Shack ultimately left Regency in July 2018, creating a "void" that Hajjar "stepped in" to fill. Exh. 5 to Ellis Declaration in Support of Opposition (July 31, 2018 Email, Minutes of SOW Partners Call – 7/30/18, WSMRE-00000499-500) at 499, ECF No. 130-5. On July 22, 2018, Hajjar purported to repudiate the Agreement on behalf of West Side, stating that Shack had signed the agreement without authority to do so. Exh.

3

1 to Vogelei Declaration in Support of Opposition (July 22, 2018 Email, Constellation000936), ECF No 129-1.  Hajjar, in an email to Constellation, stated "we had no idea how constellation worked." *Id.*  But then, Hajjar continued to engage in construction-related work for Constellation in connection with the Agreement.  For example, he indicated to West Side's members that he had been on "multiple calls with architect, Constellation, and ECS regarding the primary gating item, getting the HVAC turned on."  Exh. 5 to Ellis Declaration in Support of Opposition (July 31, 2018 Email, Minutes of SOW Partners Call – 7/30/18, WSMRE-00000499-500) at 499, ECF No. 130-5 (emphasis added).

On August 2, 2018, Constellation sent Hajjar a proposed payment plan that would enable its contractor to resume construction at West Side.  Hajjar replied:

> "[A]s a good faith effort we will be wiring $100k this Monday to constellation energy.  The payment plan that you have created was forwarded to our legal team which they have to review and approve. We intend to pay you, and lets move forward on a positive footing."

Exh. 2 to Vogelei Declaration in Support of Opposition (August 3, 2018 Email, Re: Constellation Payment Plan Draft, Constellation000922-925) at 922, ECF No. 129-2.  West Side made at least two payments to Constellation, a $100,000.00 USD payment on August 6, 2018, followed by a $6,804.08 payment on December 27, 2018.  Exh. 4 to Vogelei Declaration in Support of Opposition (West Side Payment Application, Constellation001184), ECF No. 129-4.

After this initial payment, Hajjar continued to negotiate with Constellation regarding this payment plan.  On October 9, 2018, he wrote:

> [T]he following is what we intend to do.  We have already sent you 50k, and today we will send you another 50k followed by another $100k on 10/12.  You will receive on 10/17 $75k, on 10/26 $75k, on 11/2, $75k, and on 11/9 $75k and on 11/16 $75k which will put us within 30- 45 days. . . For now this will get us up to 30-45 days current.

4

Exh. 3 to Vogelei Declaration in Support of Opposition (October 10, 2018 Email, RE: URGENT – Hajjar Medical Office Buildings/West Side Manhattan Real Estate, Constellation000067-69) at Constellation000068, ECF No. 129-3.   Hajjar continued to acknowledge the agreement in communications with West Side's members as late as March 2019.   Exh. 4 to Ellis Declaration in Support of Opposition (March 8, 2019 Email re: BMS and ECS Project Proposal – WSMRE-00000579 – 675) at WSMRE-00000619-627, ECF No. 130-4.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[2] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

To successfully bring a breach of contract claim, a plaintiff must plead: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Of these elements, only the first is in dispute. The question before the Court is whether there is a dispute of material fact regarding whether West Side is bound by contract to pay Constellation under the Agreement. West Side argues that the individual who entered into the Agreement on its behalf—Barton Schack, who worked for a management entity used by West Side's former manager, John Hajjar—lacked authority to do so. However, as explained herein, the Court need not decide whether Shack had authority to enter into the Agreement on West Side's behalf in the first instance, because the Court concludes that, under the undisputed facts, West Side *ratified* the Agreement. Accordingly, Constellation is entitled to judgment as a matter of law on

6

their breach of contract claim.  Further, the Court finds that Constellation is entitled to fees and costs, as well as interest, pursuant to the Agreement.

## I.    Ratification of the Agreement

Under the "doctrine of ratification . . . a party is held liable as a principal as a result of his affirmance of an act done by one who purports to be acting" on its behalf.  *See J.M. Heinike Assocs. v. Chili Lumber Co.*, 443 N.Y.S.2d 512, 513 (4th Dept 1981).  "The acts of an agent are imputed to the principal if the principal adopts the unauthorized act of his agent in order to retain a benefit for himself." *Salta v. United States*, No. 21 Civ. 08911, 2024 WL 4308127, at *7 (S.D.N.Y. Sept. 25, 2024), *aff'd*, No. 24-2700-CV, 2025 WL 2828626 (2d Cir. Oct. 6, 2025) (citing *In re S. Afr. Apartheid Litig.*, 633 F. Supp. 2d 117, 122 (S.D.N.Y. 2009)); *accord Cologne Life Reinsurance Co. v. Zurich Reinsurance (N. Am.), Inc.*, 730 N.Y.S.2d 61, 68 (1st Dept 2001); *see also* Restatement (2d) of Agency § 98.  Even where an agent lacks authority to "sign contracts and incur debt" on an entity's behalf, the "partial payment of invoices" by that entity on the disputed contract "constitutes ratification of the agreements made" by the agent.  *Mulitex USA, Inc. v. Marvin Knitting Mills, Inc.*, 784 N.Y.S.2d 506, 507 (2004); *see also Cooper v. Greenberg*, 542 N.Y.S.2d 631, 631 (1989) ("A contract executed under duress is merely voidable, not void, and can be ratified and affirmed as a matter of law by payment.").

Here, the undisputed facts compel the conclusion that West Side ratified the Agreement.  First, the Parties do not genuinely dispute that Hajjar had the authority to bind West Side.  In fact, West Side admits not only that Hajjar had authority to bind West Side but acknowledges that he was "the only person who had [such] authority in the building." Shahim Depo. Pt. II at 31:15-17.  While West Side notes that all contracts over $500k required a majority vote of the LLC's members, West Side's members never invoked that oversight authority over Hajjar's actions. West Side's members were aware that Hajjar was signing large construction contracts, but no member

7

exercised any form of review. *See* Shahim Depo. 102:3-103:25. No matter the wisdom of West Side's delegation of authority to Hajjar, it cannot now, after allowing him to act unsupervised on its behalf for many years, repudiate his actions.

And it is undisputed that West Side, through Hajjar, made several payments, negotiated a payment plan, and accepted the benefits of Constellation's services. *See supra* at 3-4. Under New York Law, West Side had an obligation to repudiate the Agreement if it did not wish to be bound. *Mulitex*, 784 N.Y.S.2d at 507. It is undisputed that, instead, West Side established and partially executed a payment plan, all while accepting the benefits of the Agreement from Constellation.

Accordingly, the Court concludes that West Side is bound by the Agreement. And as West Side does not meaningfully dispute, its failure to pay the outstanding balance constitutes breach.

## II. Other Issues as to Liability

West Side raises two other issues that it asserts preclude summary judgment. First, West Side argues that there are issues of fact with "as to the performance of the contract on Constellation's part." *See* West Side Memorandum of Law in Opposition to Summary Judgment at 9-10, ECF No. 128 ("West Side Opp."). However, based on the undisputed facts, the Court concludes that Constellation performed its obligations under the contract. As West Side does not dispute, Constellation paid $964,062.72 to ECS. Const. Stmt. ¶¶ 5-6. Constellation also delivered and provided substantial goods and services, including electricity, to West Side per the contract's terms.[3] *Id.* Because Constellation provided its services pursuant to the contract and established

---

[3] To the extent West Side seeks to repudiate Shack's acceptance of the provided materials, Shack's allegedly improper actions were ratified by Hajjar's payment and negotiation under the Agreement's terms. As noted above, if West Side, acting through Hajjar, wished to repudiate Schack's acceptance of the goods and services provided by Constellation as inadequate or faulty, it had a duty to do so. *See* Section I, *supra*. Instead, Hajjar negotiated and made payments on the contract, binding West Side to Schack's acceptance.

damages in the amount of underpayment, the Court concludes that it is entitled to judgment as a matter of law on its breach of contract claim.

Second, West Side argues that there is a factual dispute as to whether Hajjar paid Constellation with secret stolen money from a capital call. *See* West Side Opp. at 9-10. In their view, Constellation would receive double-payment if the Court rules in their favor. While true that contract principles would prohibit Constellation's claim if they already received payment, West Side has produced no evidence to support the assertion that Constellation was secretly paid by Hajjar. A fact is not disputed by virtue of a party saying so: the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Because West Side does not provide any evidence that Constellation is in possession of the missing funds, Constellation remains entitled to judgment as a matter of law.

## III.    Remedy

Having found that West Side is bound by and has breached the Agreement, the Court now turns to the proper remedy. On July 30, 2020, Constellation sent a final demand letter to West Side, requesting that West Side pay $1,244,364.53—the amount due and owing under the Agreement. West Side does not dispute that this is the outstanding balance. *See* West Side Response to Statement of Material Facts ¶ 7, ECF No. 131. Constellation argues that it is also entitled to pre- and post-judgment interest on this amount, in addition to the attorneys' fees and costs incurred while attempting to recover this outstanding balance. Because the contract explicitly provides for said interest and recovery of fees, the Court agrees.

### A.    Interest

"[S]tate law governs the award of prejudgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008) (citing *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000)). "New York

9

courts have long held that when an agreement involving an indebtedness provides that the interest shall be at a specified rate until the principal shall be paid, then the contract rate governs until payment of the principal, or until the contract is merged in a judgment." *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 258 (N.Y. 2011); *see also Yellow Book of New York, L.P. v. Cataldo*, 81 A.D.3d 638, 640-41 (2d Dep't 2011) (requiring award of 18% interest rate contained in contract); *Astoria Fed. Sav. & Loan Ass'n v. Rambalakos*, 49 A.D.2d 715, 716 (2d Dep't 1975) (where the contract provides an interest rate, "the contract rate, rather than the statutory rate, governs the rate of interest after maturity and before judgment").

Here, the Agreement provides that "interest will accrue daily on outstanding amounts from the due date until the bill is paid in full at a rate of 1.50% per month, or the highest rate permitted by law, whichever is less." Const. Stmnt. ¶ 9. West Side does not dispute that this is the contractually stipulated interest rate. West Side Response to Statement of Material Facts ¶ 9, ECF No. 131. The Court therefore concludes that Constellation is entitled to pre- and post-judgment interest on West Side's outstanding balance at this rate.

### B. Attorneys Fees

Under the Agreement, West Side is liable to Constellation for "all costs (including attorneys' fees, expenses and court costs) [Constellation] incur[s] in collection amounts [West Side] owe[s] [Constellation] under this Agreement." Const. Stmnt. ¶ 8. "Where attorneys' fees are provided for by a provision of a contract, such a provision is enforceable under New York law and courts 'will order the losing party to pay whatever amounts have been expended ... so long as those amounts are not unreasonable.'" *Griffen Security, LLC v. Citadel Car Alarms, LLC*, 19 Civ. 3494, 2020 WL 3264173, at *2 (S.D.N.Y. June 17, 2020) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

Constellation has represented to the Court and to West Side that its attorneys' fees and expenses amount to $164,519.51.  Const. Stmnt. ¶ 8.  West Side "has not contested the reasonableness of that amount" despite being on notice of Constellation's sought relief.  *Powers v. Brit. Vita, P.L.C.*, No. 92 Civ. 4000, 1992 WL 296433, at *2 (S.D.N.Y. Oct. 7, 1992) (granting full amount of requested fees where opponent did not contest reasonableness); *see also* West Side Memorandum of Law in Opposition to Summary Judgment at 8 n.7, ECF No. 128 ("Constellation's claim for attorneys' fees is entirely contractually based.  Therefore, since there is no contract, Constellation has no viable claim for attorneys' fees.  WSMRE reserves all rights to challenge the reasonableness of any amounts of attorneys' fees proffered by Constellation.").  West Side purported to reserve the right to challenge fees in the future, but it has waived that right.  Constellation sought summary judgment not only on the issue of its entitlement to fees, but also on the amount of fees.  It included its argument as to the amount of fees within its summary judgment briefing and attached the relevant supporting evidence at the time.  Constellation Memorandum of Law in Support of Summary Judgment at 5-6, ECF 118; *see also* Declaration of Scott D. Ellis in Support of Constellation's Motion for Summary Judgment, ECF No. 120 (explaining reasonableness of Constellation's fee request).  West Side had an opportunity to contest these fees as unreasonable but failed to do so.  *See Powers*, 1992 WL 296433, at *2.  The Court therefore deems the issue waived.  Absent evidence to the Court that these fees are, in fact, unreasonable, the Court is compelled to conclude that Constellation is entitled to the full amount of these fees.  *See id.*  Based on the submissions, the Court finds that the hours are reasonable, as are the rates within the relevant market.

## CONCLUSION

Based on the undisputed facts, the Court concludes that, whether or not Barton Schack had the authority to enter the Agreement on West Side's behalf, West Side ultimately ratified that

11

agreement by making payments and accepting the benefits of Constellation's performance. Accordingly, West Side's failure to make payments under the agreement constitutes breach, and based on the contract's terms, Constellation is entitled to the full outstanding balance owed, in addition to attorneys' fees and costs and pre- and post-judgment interest. Accordingly, Constellation's Motion for Summary Judgment is hereby **GRANTED**, while West Side's Motion is **DENIED**.

Within fourteen (14) days of this Order, the parties are directed to meet-and-confer as to the form of a proposed judgment. Within twenty-one (21) days of this Order, Constellation is **ORDERED** to file a proposed judgment with a calculation of the amount of interest incurred at the contractual rate and for the amount of attorneys' fees. West Side will have seven (7) days to file any objections to the interest calculations at that time, in a letter not to exceed three (3) pages. If any such objections are filed, Constellation shall have seven (7) days to file a response, in a letter not to exceed three (3) pages.

The Clerk of Court is respectfully directed to enter judgment in favor of Constellation and terminate ECF Nos. 117, 122, 123, 124, and 125.

SO ORDERED.

Dated: February 2, 2026

New York, New York

DALE E. HO
United States District Judge